Mr. Eisenstein, we'd be pleased to hear from you. Thank you, Your Honor. May it please the Court, Mr. Eisenstein and I represent a number of private landowners that are in the path of a proposed power line which has not yet been approved by the Maryland Public Service Commission. The District Court erred in issuing a preliminary injunction because PSEG did not satisfy any of the elements or the four factors under winter versus natural resources. I'm going to be addressing only the first factor, success on the merits, and my colleague, Mr. Eisenstein, will address the other factors. PSEG cannot succeed on the merits because PSEG, as a matter of law, cannot invoke access provisions under Maryland Real Property Article 12111. The language of the statute is clear. It applies only to entities, quote, having the power of eminent domain. There is no statute anywhere in the Maryland Code containing a delegation of eminent domain authority to a transmission line developer that does not have a Certificate of Public Convenience and Necessity, or I'm going to call it a CPCN for short. Do you agree that once an entity got a certificate that they have, quote, have the power of eminent domain at that point? Yes, they do. And at that point, in order to actually condemn land, do they still have to go through the Title 12 process? Yes, they do. They would have to go through the Title 12 process. That's not under 12111, that's the pre-access, but yes. After that, they would have to continue on to condemn the property. But you agree once they get the certificate, they have, you know, in the statutory language, at that point, they have the power to exercise eminent domain? That is correct. Even though that power is conditioned on compliance with Title 12? Correct. So why does it matter if their power is conditioned on two things rather than one? So you agree that they don't have to have, like, the literal power to execute, right? Because they've got to go through Title 12. But, so why is Title 12 different than 12111? It's just an additional condition on the class of entities that can exercise the power? 12111 specifically requires that you have to have the power at that time in order to proceed with 12111. And so that's why... But the certificate, but to get the certificate, they're part of the class of entities that can seek a certificate, right? That can seek a certificate, right? And so the question I'm just trying to figure out is, once we agree that having the power doesn't mean the power to execute, because everybody has to use Title 12 in order to execute, why does the additional hurdle of getting a certificate take the power away? Because having the power of eminent domain means that you have received that power by delegation from the state of Maryland. That's what we're talking about. Nobody else has the ability to give this power to PSIG. It has to be delegated by the legislature. By the legislature, though. It can't be delegated by the executive, right? That's correct. It has to be delegated by the legislature, and the legislature here delegated it in a very specific way with specific requirements, and what it says is that it's delegated on issuance of a CPCN. But I thought you just agreed that you can't have delegation by the executive, right? So the Public Service Commission can't be the one that delegates the power. It has to be the legislature. Right, but the legislature... So that means that the legislature delegated the power ex ante, but then gave the Public Service Commission sort of a condition on the actual exercise of that power. We have to look to the statute, and so if you agree they had the power after the certificate, and we agree that only the legislature can delegate the power, then the Public Service Commission could not have been the one that delegated the power. It had to come from the statutory scheme. Right, but it's not the Public Service Commission that's delegating the power. It is the legislature setting up the delegation and indicating in the statute when that delegation occurs. It doesn't occur before the issuance. It only occurs on issuance. So that you have to have a delegation in order to have the power of eminent domain, and what we are arguing is that under the public... All of the different provisions of Maryland law seem to operate, whether it's a grant or whether it's an exercise of a power of eminent domain, there seems to be a single underlying assumption to all of these different provisions of Maryland law, and the assumption is that of a power that already exists, and the power that already exists is the power of eminent domain, and all of those statutory provisions are traced to that underlying presumption. The underlying presumption that you're referring to, Your Honor, is that the state has the power of eminent domain. The legislature has the ability to delegate the power of eminent domain, but that does not mean that the entity who receives that delegation has that delegation before the legislature delegates it, and what we're saying here is the legislature made a delegation, but they specified who they were delegating it to. They did not say they're delegating it to an entity who just happens to be an applicant for CPCN. They said they're delegating it to an entity who has been issued a CPCN, so it's not a pre-existing power of eminent domain that this private company, who has no prior approvals from the state of Maryland whatsoever, has. They only have it once the Public Service Commission has issued a certificate. That's when they get it, according to the plain language of the statute, which says on issuance, and other statutes don't require that, but this one does. They are specifying who gets it, and it's reasonable for the legislature to say we're not going to give it to an entity that has no approvals whatsoever from the state of Maryland other than this. So, my time is up, Your Honor. Can I just ask one quick question? You're asking us to construe Maryland law, and I'm wondering whether you would have an objection to us certifying this question to Maryland's highest court. I certainly would not. Thank you. Your Honor, it's Harris Eisenstein. As Mr. Wyand presented, I'll be addressing the remaining three arguments for injunctive relief. As this Court knows, it is a very high burden to get a preliminary injunction. PSAG cannot satisfy the first element, nor can it satisfy the remaining three. I'd like to touch on irreparable harm first. The district court found that PSAG's unapproved transmission line, quote, could be, could be substantially delayed in the absence of a preliminary injunction, and that PSAG's prospective financial losses resulting from that delay constitute irreparable harm. First, economic losses generally do not constitute irreparable harm, but in any event, PSAG presented no evidence, zero evidence of prospective financial losses. All they presented to the district court was the total amount previously spent on consultants and attorneys, and the record establishes that PSAG can recover 100 percent of those costs. The district court's conclusion on irreparable harm was built on compounding assumptions. The first assumption was that with a preliminary injunction to the Who do they recover the costs from? They were covered through the FERC order, Your Honor. Prudently incurred costs are recoverable 100 percent, and it's a presumption. But if, if bill, right? If abandoned, Your Honor, actually, if abandoned, that's how they recovered. It's an abandoned plant incentive in the FERC order, which is found at JA 2251 through 2255. So these compounding assumptions, first, with immediate access, that PSAG will secure a CPCM. Second, they will then build a 67-mile transmission line above ground through greenfields across three Maryland counties. This is the most ambitious transmission line that Maryland has ever seen. And the third assumption is that PSAG will then... What makes it, what makes it ambitious? Just out of curiosity? It's just the largest project that Maryland has ever seen above ground transmission. What does that have to do with the, with the preliminary injunction? It may be the needs are significant. When you, one of the things that concerns me here is I know that the likelihood of success in the, on the merits is a critical winter factor, but there are also other critical factors. And one of those is the question of the public interest. And here you have a situation where if the access is denied, or if it's significantly delayed, that the entire project falls apart. It's the kind of project where each, the final result is connected to each step in the chain. And I realized that the power of eminent domain is among the most disagreeable powers at the hands of government. And I understand the significant frustration that landowners, that landowners feel when people are asking for access to their property and where the prospect of a transmission line lies in the balance. I understand that. But, you know, sometimes eminent domain is distasteful as it is, is necessary. And part of what seems to me to figure into the public interest is if this, if this project is not going through, there's likely to be a danger of significant blackouts for Maryland residents in the future. And Maryland may go the way of California in light of, in light of energy blackouts. And so I wonder if that shouldn't be part of our calculus. The other thing is that this is not just my assertion about what, where the public interest lies. You have a situation where the federal authorities have deemed this to be completely necessary. And you have not only FERC in deeming it, but FERC's regional authority thinking that this is a critical need for Marylanders in the future. And if we review the preliminary injunction, I agree that likelihood of success on the merits is crucial. But I also think that this is one of those cases in which all the winner factors should not be overlooked. And given the fact that FERC has weighed in so substantially and saying this is needed and FERC's regional branch has said this is needed, if we deny even access, isn't that going to cause the project to fall apart? And because in these kinds of cases, delay is often is detrimental. It is often very detrimental to cancellation. That's just the way investments work and businesses work. Sure. I totally understand, Your Honor. And if... And so I'm concerned practically about if this thing falls apart due to the delays, whether we are not lending our hand to eventual blackouts in Maryland. Is that making it a situation where it resembles another California? So, Your Honor, two points. It is true that PSAG presents this very dire situation absent their proposed power line. But it's also true that this proposed line is part of a much broader package of transmission solutions that FERC says is necessary. It's also true that though FERC and PJM have said we need more transmission in and around Maryland and PJM's region, which is 13 states basically east of Chicago, all of those local transmission projects have to be approved by the local bodies here, the Maryland Public Service Commission. And your point, Your Honor, with respect to the importance of all four elements, that's what I was getting at on irreparable harm. Are you going to have another crack at this before the Public Service Commission actually finally rules on the certificate of convenience and necessity? The Public Service Commission isn't set to receive final briefing until February of 2027. But the bigger... You're going to have another shot. You're going to weigh in on that at that level, aren't you? At that stage? Me personally? No, I don't mean you personally. I'm talking about your client. All of the folks who are along the proposed route, many of them... The landowners are going to be heard at that point before the Public Service Commission finally makes a decision on the certificate. But it's a much different inquiry, Your Honor. It's on whether they can actually build the project and the actual location of the route. And if they're able to do both, then they can condemn. Remember, this is... You're not answering my question. I'm saying this isn't the end of it because what they're seeking here is all they're having access and nothing more. And all I'm asking is, this is a very preliminary stage, is it not, in getting a certificate from the Public Service Commission? Nobody's digging in the ground here. We're talking purely about access to assess environmental harm. It is true that nobody's building this line yet, and it cannot be built unless the Public Service Commission approves it. Thank you. Mr. Fisher. May it please the Court. The threshold question in this appeal is whether under Maryland Code 12-111A, PSEG is a body corporate having the power of eminent domain so that it is entitled to take surveys. The surveys are necessary for a federally planned project in which FERC and PJM have determined a need for a transmission line in order to forestall system failures and potential blackouts. Do you agree with me that eminent domain is a federally disagreeable step when the state takes it? I think it... These are landowners and they care about their property, and many of them have spent their life savings developing their property. And it's... Your view is that, yes, it is intensely disagreeable, but unfortunately, sometimes these things are unnecessary, which is why you have a power of domain in Maryland property law to begin with. And that without this transmission line, which a lot of folks more knowledgeable and well-versed than I am, think this is important. If Maryland's energy needs are going to be met in the future, there could be some real, real problems if this thing collapses. Well, I agree, Your Honor. I agree with the proposition that eminent domain really, as a practical matter, should be a last resort. That it's an extraordinary power that allows the government to take property by force. So how does your client have the power of eminent domain under this statutory section that you just cited? Certainly, Your Honor. The source of law that grants transsource the power of eminent domain is section 7-207B3 of the public utilities article. And for reasons I will explain in detail, Your Honor, section 7-207B3 states two propositions that are clear and really indisputable. The first is that section 7-207B3 identifies a federally regulated public utility. It's either a currently federally regulated public utility or a public utility that will be regulated when the line is in operation. It identifies them as having the power and authority in Maryland to construct a high voltage transmission line and to exercise eminent domain in connection with construction. Now, what constitutes a federally regulated public utility is covered by federal statute and regulations. And both PJM and FERC have determined that PSEG, for purposes of this project, is qualified as a federally regulated public utility for this project, which is called the NPRP transmission line, Your Honor. Now, the second part of section 7-207B, that's, I think, equally clear and undisputable, is that the exercise of the power of eminent domain is preconditioned on the public utility obtaining a CPCN from the Maryland Public Service Commission, or PSC, establishing the alignment of the transmission line. Because the siting and the alignment is a state responsibility, and the need for the line is a federal responsibility. So, the pivotal question really boils down to whether a federally regulated public utility, such as PSEG, must satisfy the preconditions to the exercise of eminent domain before it can constitute a corporate having the power of eminent domain that is entitled to take surveys under section 12-111A. The appellants contend that a federally regulated public utility, and then they don't contest that PSEG is a federally regulated, will be a federally regulated public utility. They argued that that utility is entitled to take surveys under section 12-11A only if it has satisfied the preconditions to the exercise of eminent domain, most particularly the precondition that a CPCN for the alignment, establishing the alignment, is first granted. So, the surveys can only go forward under section 12-11A according to the property owners if the CPCN has been awarded. That interpretation of section 12-11A is wrong because it's inconsistent with the language of section 12-11A. It's inconsistent with the legislative purpose, as explained by the Maryland Appellate Court of the statute 12-11A, and it's also their interpretation would effectively make, it would render the CPCN process for the approval of high voltage transmission line corridors, it would render them completely unworkable. I don't disagree with you that it would, it would render them unworkable. I guess I'm looking at the language of the statute, and it seems to me that it's not as clear as you suggest, and in particular looking at the code 7-207 doesn't actually speak of the power of eminent domain. It speaks of the exercise of the right of condemnation, and I believe it extends that right on issuance of the certificate of public convenience and necessity, which it hasn't happened here yet. Your Honor, the power is, may be exercised. I think under the proper interpretation of 12-11A, what the statute 7-207B3 provides is that the power of eminent domain may be exercised once the CPCN is granted, but in terms of what entities have been delegated... Wait, wait, I don't think you actually believe that either though, right? Like, because it can't actually be exercised until you also comply with the second precondition, right, which is Title 12. Well, that's correct, Your Honor. That's correct, but in this case... But it's different than saying it can be exercised, right? Because there are two preconditions here to the actual exercise by your client. I don't know why they're different, but one is PSC, and that's really energy focused, right? This is the sort of like alignment and need piece, right? And then Title 12, which is really like property focus. But those are just two separate preconditions on the power before it can be exercised. That's correct. I believe Your Honor is correct that Title 12 contains certain procedural requirements that are also preconditions to the exercise of eminent domain. Because of the language... But what that means, why that matters, I guess, and I just want to make sure I'm following. Why that matters is that you can't read the statute as suggesting that you have the power after the certificate, but before the Title 12. Either you can say they never have it until it's exercised after the Title 12 process, or you can say they have the power right now because they have the power to apply for the certificate and for the Title 12 procedures. But what you can't do is put it in the middle of those two, right? They're just two preconditions on the exercise of a power. I think that's correct, Your Honor. And I think that is the only logical way to interpret Section 12-11A to give effect to the language of Section 12-11A, which deals with future public uses. And it's the only way to reconcile it with the purpose of the statute as identified by the Maryland Appellate Court, which has said that 12-11A, its purpose is to investigate surveys. And so if the interpretation that the property owners are giving were correct, if that interpretation were correct, then you're required to take the surveys in order to obtain a CPCN. Can I ask a first-order question of what our standard of review is here? It's a little odd because we review a preliminary injunction for an abuse of discretion. But here what we have is a very able district court judge who is making a prediction about the likelihood of success that is itself a prediction about what Maryland would do. So it's like nested predictions, right? The winter step one is a forecast or prediction of likelihood of success. And in this case, because we've got an eerie guess, it's a prediction about an eerie guess. Does that matter for our review? I mean, do we review those predictions or nested predictions deferentially at all? Or do you think because, you know, the meaning of 207 is a legal question that Judge Abelson's prediction of a prediction just gets de novo reviewed? Well, I think that it is a question of law, and this court would have authority to review it de novo. I think the interpretation... The question of law, what the meaning of 207 is a question of law. But is a prediction about that a question of law? I think in the past on certain occasions, this court has deferred to a district court judges sitting in the state and having an acquaintance with the law and has looked at that, not with complete deference, because I think I could identify some circumstances where this court hasn't deferred to a district court judge. We never have complete deference on anything. I would have to, you know, I'd have to agree that it's a question of law. But on the other hand, I think that there is a fair amount of fair deference that should be awarded to a district court judge that's interpreting the law. With regard to that, if there is a fair amount of deference, as you just said, isn't this one of those cases where, you know, there are there are actually four factors in the winter calculus and one of them in a very important one and in many cases, it's the most important one. But is this not also a situation where in reviewing the district court and according to the district, according to district court with a certain, a certain deference, doesn't practicality enter into this case in several ways? First of all, all that's being asked is a preliminary step and that is whether they can conduct studies. They're not asking, they're not asking at this point for anything more. And the other practicality is that there seems to be a considerable consensus that delay can defeat these projects as much as anything else because that's just the nature of investment and of business activities. And you've got an awful lot of people at the federal level, at FERC, and you've got people with with a lot more expertise and experience than I have in this field and there are times when, you know, I pay attention to their expertise and what they're saying is several fold and that is that if this project collapses or is significantly stalled at one stage that the whole thing is in danger of collapsing. And if this collapses, that we are taking a significant chance with the provision of necessary energies for Marylanders in the future. That the practical consequences for the state of Maryland can be very, very serious and we have experience and we have illustrations before us. We don't need to just sort of hypothesize completely because we have experience with periodic blackouts and what that means to people's livelihoods down the line. And that's what you're likely looking at here. And the question is, is it impermissible to let that figure in the in the calculus of these practical considerations? They just beyond their ability to consider and I can't imagine why that would would be despite my personal distaste for eminent domain. Sometimes it's it has to be exercised and that's why the power exists in the first place. But talk to me about the practicalities and whether it's permissible to think about them. Well, Your Honor, I think that the test is a four part test as Your Honor articulated. I think all factors are relevant and important. I think that in this case, what's interesting as Your Honor articulated, well, Your Honor articulated exactly what PJM said. It isn't PSEG that said this in contradiction to my friend and colleague. It was PJM, the federal agency responsible for planning the grid that said that system. That's right. The developer here is not, we're not taking the developer's word for it. We're not just saying, no, well, the developer feels this is necessary because that wouldn't be all that persuasive. You'd have to look into what they plan to earn. But here you've got expert opinions, a process authorized by Congress, and you've got people quite outside the developer's orbit who are saying this is important. This is necessary. Well, they've made a finding not only that it's necessary, but they've concluded that there is a substantial risk of system failure and blackouts if the line is not in operation by June 1st, 2027. That date will not be reached and PJM has responded to that by saying we can only mitigate at this point. If we're not going to have this line in operation by June 1st, 2027, we can only mitigate, but the substantial risk of system failure and blackouts exists in the absence of this transmission line. Maryland... Can you, Judge Berner, ask the question of your good colleague, and I want to give you the opportunity to respond to it too, about certifying this question to the Maryland courts, right? Obviously, there's an eerie guest at the core of this. It's sort of like a central state issue. I'm not aware of our court ever certifying a question in a preliminary injunction posture, but do you have any objection to that? I mean, you've got a preliminary injunction, so I guess you probably don't really care about delay. Normally, we would think certifying's a little bit concerning in a preliminary injunction context. It's an interlocutory appeal. We're trying to do things quicker, but your colleague said they had no objection. You currently have access, so maybe you don't have an objection either. You probably are fine just drawing it out, but can you comment on that? Well, I think that as long as a preliminary injunction remains in place and we can continue performing the surveys, I can't say that I'm afraid of what the Maryland Supreme Court might do, so I don't want to say I would object to it. I think we are absolutely correct that under section 12-111, that satisfying the preconditions to the exercise of eminent domain is not necessary in order to take surveys. That if you're identified and qualify as an entity having the power of eminent domain, and we've been identified and qualified by FERC and PJM as a federal public utility, that we have the power of eminent domain and we just can't exercise it until we obtain a CPCN. And we can't exercise it until we satisfy the detailed procedural requirements in title 12, as your honor pointed out, but we are a body corporate with the power of eminent domain. And to get to one final point, in terms of the- We have jurisdiction here and there's been a preliminary injunction here and it is, I do think it's would be unusual in a situation to certify something at the preliminary injunction stage, but also because there is a significant federal component to it. It's not, it isn't just ultimately a matter of state law. It is a matter of state and federal law and the collaborative relationship that they have designed. And there is a huge significant federal component in this. Absolutely, your honor. I mean, the fact Maryland law identifies a federal public utility as an entity that can construct the lines and build, construct the lines and exercise eminent domain, but Maryland law therefore incorporates the federal law that we went through and regulations that we went through in detail in our brief under which PSEG has qualified as a federal public utility. And PJ and your honor's point is on the mark in my mind because PJM and FERC have qualified PSEG as a federal public utility in the context of a PJM determination as to the need for the line, which is a federal, not a state responsibility. So I think the federal law and federal policy is permeates throughout this, this dispute. There's just no question. And there is, and I think it's the third circuit recently pointed out in the transfers case, there is sometimes a conflict between the, the interests of the state and the interests of the, the federal government that are in PJM and FERC that have a responsibility for the provision of electricity on a regional basis. So I think that the federal, It's not being cut out of this because the public service commission still has to issue the certificate that you're not, you're not, you're not cutting the state out in any way, shape or form. The state remains part of the process. The public service commission, its power to issue or not to issue the certificate of convenience and necessity is intact. It's not being disturbed. I'm sorry, my time has expired. May I answer your question? Yeah. The, the role, the role between the public service commission and issuing a CPCN and the federal government in establishing the need for the line is, is well-defined. Especially after that, that transfers opinion, which gives such a detailed historical analysis of this. The, the role of the public service commission is citing construction and permitting of the line. So the, the public service commission establishes the alignment where the line will go, what properties will be affected and will, will govern how the line or the transmission line will be constructed. But the federal government through PJM and FERC is responsible on a regional 13 state basis for determining the, the need for transmission facilities, the need for generating facilities and to prevent congestion and, and prevent states from accumulating and benefiting from power and not benefiting their sister states and allowing transmission so that electricity is, is stable and available for, on a regional basis. Thank you, Your Honor. Thank you. Appreciate the request that you affirm the district court. Thank you, Your Honor. Mr. Eisenstein, you've got some time for rebuttal. Mr. Wyand, thank you, Your Honor. I wanted to hit on the federal versus state issue here. The Federal Power Act has no power of eminent domain. So we're, that's why we're here talking about the Maryland power of eminent domain. In fact, the Federal Power Act has a power of eminent domain, but it's only limited to certain very important, what they call national interest electric transmission corridors. And it's interesting in the Federal Power Act, they use language very similar to what the Maryland General Assembly did here, where they, where they say that the permit holder may acquire by, may acquire the right-of-way by the exercise of the right of eminent domain, which is very similar language to what we have in the Maryland statute. So wasn't the, the district court correct in relying on this transource case from Maryland Intermediate Court? It seems to be exactly on point. No, Your Honor. And, and he was not correct because, uh, the transource case was wrongly decided. It was a, it was a trial court decision. Yes. Everybody can err. I believe that even I can err. And, and, and what I, what I would point you to in that case is if you look at page seven of the opinion, she says that it's a two-part analysis. And in the first part of her analysis, she starts with an assumption that transource was a public utility. And she says it was because the transource was an electric company. I would, if you run down the statutes that she cites, you will see that, that transource is not an electric company. Electric company under Maryland law has to serve, uh, citizens within the state of Maryland directly. And transource did not meet that definition. PSEG does not meet that definition. So we are talking about, um, out-of-state, uh, utilities, not what Judge Ease was talking about in that opinion. I don't know. I actually don't know the status of transource. Maybe Judge Ease was right about that assumption, but it certainly is not an appropriate assumption here. And that, for that reason, transource should not be controlling. I want to address one final thing, which is that this, having a CPCN is not just a precondition to exercise the power of eminent domain. It's a requirement to have the power in the first place. That's why the... Why is it any, I just, I guess I don't understand that argument, if I'm totally fair about it. Like, it's a procedural requirement, just like Title 12 is a procedural requirement. They're both preconditions on the ultimate exercise of eminent domain, right? They both have to happen before the ultimate exercise of eminent domain, right? Yes, they do, but the question is... Tell me why they're different. They're both just procedural preconditions on, you know, the group that falls under three, you know, subsection IIIII, right? That's an electric company or, right, this sort of what I'll call the regulated entity, right? Which is subparagraph two, right? And so those two folks have to jump, both the electric company and the regulated public utility, have to jump through two hoops, right? They got to get a certificate, they got to jump through the Title 12 hoops. Why do we think the certificate is somehow different than the Title 12 hoops? May I answer, Your Honor? Sure. Because having the certificate is the grant. It says right in the statute, on issuance of the certificate. No, no, no, no, it says on issuance of the certificate, they may acquire it, right? Right, means that this is about the execution, right? They may execute subject to the next precondition, Title 12. I disagree, Your Honor, and I would refer you to the other statutes whenever... But it doesn't say grant, right? It doesn't say we're granting you the power, right? What we're saying is you may acquire, right? May, right, doesn't suggest a grant of power. It's like an authorization to use a power, right? That's what may means. You may do this, right? It's something that you could otherwise do that I'm granting you permission to go forward with. Why don't I read the word may, right? We talk to kids about this all the time, right? May versus can, right? May here suggests like I'm giving you permission to exercise a power that you've got. Because, if I may answer the question, every other delegation under the Maryland Code, in fact, in the federal code, it uses that exact same language. There's no other delegation in the code of the power of eminent domain to a power company other than right here. And if you look at the other utilities that are in the Maryland Code, there's the oil pipeline corporations. They use identical language, which is that it may acquire by condemnation in accordance with Title 12, the real property article. That's how a gas company gets its power of eminent domain. That's how an oil company gets its power of eminent domain. That's how a water company gets its power of eminent domain. That is a language of grant. And even in the Natural Gas Act, that's the same, the same may acquire is the same language used for a grant. Thank you. Mr. Lyon. Your Honor, it's Harris Eisenstein. Just briefly, I'd like to address Judge Wilkinson's practicality argument first. As my colleague acknowledged, this transmission line will not be built by the middle of 2027. So the predictions of what's going to happen then become now reality. And as we presented to the District Court, there are contingency plans that are in place right now to make sure that the predictions of brownouts and blackouts and all these terrible things happening in Maryland don't actually happen. Those contingency plans include keeping alive two very large generating facilities in Anne Arundel County. In addition, and perhaps even worse, this particular transmission line, in order for it to provide electricity to anybody in the Maryland, the only way it does that, it's called the Dobbs substation, the only way it does that is if Dobbs is upgraded. And there was evidence before the District Court that provides that the Dobbs substation will not be upgraded until 2030 at the earliest. So these predictions of this imminent and irreparable disaster are not actually reality. That's a, that's a policy question and that's what, you know, with all respect to you and the panel and everything, we are not especially well versed in making an informed prediction as to when the blackout occurs or is likely to exist. There are certain times when a federal court actually, Chevron notwithstanding, can defer the expertise of the people who have the expertise. And I have no disrespect to you or me or anyone else to say that the expertise is not lodged right here between us. I, I, I don't, I don't purport to be an expert on generation, Your Honor. All I, all I wanted to represent to the Court is that in the record, it is, it is clear that there are contingency plans that are going to protect Marylanders. And if I could back up with my last 50 seconds, on the balance of equities, as the Court has acknowledged, they have to check every single box. On the balance particular, it's our position that this preliminary injunction is a credible and prolonged of condemnation. It says by its express terms that access is for, quote, acquisition and future use of the properties in connection with the Maryland Piedmont Reliability Project. It doesn't say that they might acquire it or that they could acquire it. It says for acquisition and future use. That looming threat is a multi-year cloud on title. It's going to extend at least through the CPCM process. I ask, Your Honors, who would buy property earmarked for future acquisition in connection with a high voltage overhead transmission line? The answer is no one. And yet, PSEG is not paying just compensation. There's no promise of just compensation. The preliminary injunction does work at taking on our clients. And for the reasons we've briefed, we would ask that the preliminary injunction be vacated. All right. Thank you. We'll come down. We'll brief counsel. Appreciate both of your arguments. We'll take a brief recess. This honor report will take a brief recess.
judges: J. Harvie Wilkinson III, Julius N. Richardson, Nicole G. Berner